Curia, per

Johnson, J.
The general rule is, that a partnership is not bound by the act of one of its members, unless it is done on account of, or in the way of, their business. Drawing, accepting, or indorsing bills or notes, by one partner, in the name or in behalf of the firm, renders all the firm liable to a bona fide holder, although the other partners were ignorant of the transaction ; and it is said, even where the individual partner intended it as a fraud on the others ; such is the rule laid down by Chi tty, in his treatise on Bills, p. 39, 40. It is founded, he remarks, on the custom of merchants, and has been long established as law. In Swan vs. Steele, 7 East, 210, Lord Ellenborough says : “ It would be a strange and novel doctrine, to hold it necessary, for a person receiving a bill of *309 exchange, indorsed by one of several partners, to apply to each of the other partners, to know whether he assented to such indorsement; or otherwise, that it should be void. There is no doubt, that in the absence of all fraud on the part of the indorsee, such indorsement would bind all the partners.” He marks, also, very clearly, the distinction between that case, and the case of a creditor of one partner colluding with him to obtain payment or security out of the funds of the partnership, with a knowledge that it is against the consent of the others, where it is held to be fraudulent and void.
In support of this motion, the counsel has relied on the case of Foot vs. Sabin, 19 Johns. R. 158, where the converse of the rule is laid down and maintained ; but upon referring to the case of Dob vs. Halsey, 16 Johns. R. 38, on the authority of which Foot vs. Sabin was decided, it will be seen that it is confessedly in opposition to the rule as established in England; and Mr. Justice Spencer remarks, that the difference consists in this, that in New York, the separate creditor who has obtained the partnership paper for the private debt of one of the partners, is bound to shew the assent of the whole firm to be bound. The rule in the King’s Bench throws the burthen of showing that it was against the consent, and without the knowledge of the other partners, and the covinous act of the individual partner, on the firm ; and in Foot vs. Sabin, the ■same learned Judge deduces from that case, the rule, that if one partner makes or indorses a note or bill as security for a stranger, the payee is bound to prove the assent of all the partners ; and he reasons with great propriety, that there is no foundation for the distinction between the case where the individual partner gives the note of the firm for his own debt, and where he gives it as security for the debt of another.
Since the argument of the case, I have taken some pains to inform myself as to the usage in this city, and the concurrent testimony of all, is, that the firm is bound by the accommodation acceptance or indorsement of one of the partners in the name of the firm. In sales on credit, particularly to persons not residing in town, a town accept- *310 anee is very frequently required; the case on hand is an instance. It is known, too, that most of the business of the banks is transacted in this way ; and a gentleman of respectability, who said he had been in trade here for thirty years, remarked, that in all that time he had never heard the question asked, whether all the firm assented ; and however highly we may respect the decisions of the deservedly distingushed supreme court of New York, we cannot consent to follow a rule which would introduce so much disorder and confusion in the commercial commu-; nity.
This case appears to me, however, to stand even on higher grounds, and to steer clear of this question, if it can admit of any doubt. The allegation on the part of the defendants, is, that there was collusion between the plaintiffs and .Prescott, one of the firm, to bind the firm for the debt of Bacon, his father-in-law. Now the proof is, that Bacon’s draft was sent to the counting house of the defendants, and delivered to Bishop, another member of the firm, who detained it all night, that he might consult Prescott, who was then absent; and in the morning it was returned, with the acceptance of the firm indorsed by Prescott; and the goods were not delivered by the plaintiffs to Bacon, until that was done. , This draft was after-wards taken up, and a note, drawn by Prescott in the name of the firm, substituted in its stead, and on this the present action is brought. On the back of the draft a memorandum is indorsed in Bishop’s hand, that it was paid on the 9th January 1827. Now these circumstances not only shew, that there was no collusion between the plaintiffs and Prescott, but raise in my judgment a very satisfactory presumption that the acceptance was made with the assent of all the members of the firm. Bishop had no interest or motive to conceal it from Gray, and the strong probability is, that he would have consulted him on a matter, in relation to which, it appears, he himself was disinclined to-act.
Motion is dismissed.
O’Neall, J. concurred.